BURLINGTON INDUSTRIES and Liberty Mutual Insurance Company *v.* Alice PICKETT

CA 97-1380 983 S.W.2d 126

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered November 11, 1998

*Friday, Eldredge & Clark,* by: *Guy Alton Wade,* for appellants.

*Baim, Gunti, Mouser, DeSimone & Robinson,* by: *Judith A. DeSimone,* for appellee.

S AM BIRD, Judge. This is an appeal from a Workers' Compensation Commission order that awarded appellee, Alice Pickett, interest that was incurred on medical bills paid by her health-insurance carriers after she suffered a compensable injury while working for Burlington Industries. The appellants, Burlington Industries and Liberty Mutual Insurance Company, do not contest the medical bills that they have been ordered to pay, but they contend that they should not have to pay interest on these bills because the bills were not itemized or provided to them in a timely manner and because the bills were not submitted in accordance with Rule 30 of the Workers' Compensation Commission; therefore, they have not been able to evaluate them to determine which bills are reasonable and necessary.

Appellee was employed by Burlington Industries when she sustained a gradual-onset injury to her lower back. The appellants controverted compensability, and, after a hearing on the issue, the administrative law judge entered an opinion on February 9, 1994,[1] finding that appellee had sustained a compensable injury and awarding temporary total disability benefits beginning May 25, 1990, continuing reasonable medical expenses, and awarding attorney's fees. Between the time that the injury manifested itself in May 1990, and the time that the injury was found to be compensable in 1994, the appellee underwent two back surgeries and incurred substantial medical bills.

On March 1, 1996, a second hearing was held to determine claimant's entitlement to additional benefits because she contended that she was permanently and totally disabled, and she sought reimbursement for medical payments that had been made by Provident Insurance Company, John Hancock Insurance Company, Medicare, and herself. The law judge found that as of the March 1, 1996, hearing, the appellants had paid a total of $35,589.74 in indemnity benefits, temporary total disability benefits from May 25, 1990, through February 22, 1994, and attorney's fees. However, the appellants had paid neither indemnity benefits nor medical benefits for the period subsequent to February 22, 1994. The law judge also found that Provident Life Insurance Company, the group health-care provider for the employees of Burlington Industries, had paid $43,612; that John Hancock Insurance Company, the health-care provider for appellee's husband, had paid $47,552.18, and that Medicare had paid $408. Further, the law judge found that appellee had incurred $1,066.17 in out-of-pocket expenses and at least $500 in annual deductibles.

On October 31, 1996, the administrative law judge entered an order in which he made the following findings[2]:

---

[1] In his October 31, 1996, order, the law judge repeatedly referred to his "February 22, 1994, Opinion." However, it is obvious to us from the record that the law judge's first order was actually dated February 9, 1994, and that his repeated reference to an opinion or order dated February 22, 1994, is a mistake.

[2] The law judge referred to the appellants as "Respondents #1" because, at the time of the hearing, the Second Injury Fund was a party in the case, and the law judge referred to it as "Respondent #2."

9. The respondent shall pay all reasonable hospital and medical expenses arising out of the injury of May 24, 1990.

10. Respondents #1 have failed to pay temporary total disability benefits to the claimant subsequent to February 22, 1994, and a 20% penalty is assessed on said benefits pursuant to Ark. Code Ann. § 11-9-802(c).

11. Respondents #1 have failed to pay indemnity benefits to the claimant to correspond to the claimant's permanent physical impairment as a result of her May 24, 1990, compensable injury, accordingly, a 18% penalty attached to said benefits pursuant to Ark. Code Ann. § 11-9-802(b).

12. Respondents #1 is liable for interest, pursuant to Ark. Code Ann. § 11-9-809, on incurred medical paid on behalf of claimant's compensable injury by Providence [sic] Life Insurance; John Hancock Insurance and Medicare — Blue Cross/Blue Shield.

The Full Commission affirmed and adopted the findings of the law judge, and the appellants bring this appeal.

■ ■ When reviewing a decision of the Workers' Compensation Commission, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirms that decision if it is supported by substantial evidence. *Jeter v. B.R. McGinty Mechanical*, 62 Ark. App. 53, 968 S.W.2d 645 (1998); *Morelock v. Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996); *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993); *College Club Dairy v. Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). We do not reverse a decision of the Commission unless we are convinced that fairminded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Milligan v. West Tree Serv.*, 57 Ark. App. 14, 941 S.W.2d 434 (1997); *Willmon v. Allen Canning Co.*, 38 Ark. App. 105, 828 S.W.2d 868 (1992). The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commis-

sion's conclusion, we must affirm its decision. *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998); *St. Vincent Infirmary Med. Ctr. v. Brown*, 53 Ark. App. 30, 917 S.W.2d 550 (1996); *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). In our review, this court recognizes that we must defer to the Commission in determining the weight of the evidence and the credibility of the witnesses. *High Capacity Prods. v. Moore, supra; Mikel v. Engineered Specialty Plastics*, 56 Ark. App. 126, 938 S.W.2d 876 (1997). We have applied this standard of review to the case at bar and find there to be substantial evidence to support the Commission's decision, and we affirm.

Appellants argue that the Commission erred in awarding interest because the appellee did not produce any medical bills in conformance with Rule 30 of the Workers' Compensation Commission; therefore, the bills cannot be considered "properly submitted bills." They argue that appellee failed to present any medical bills until the second hearing, on March 1, 1996, and those bills contained only total amounts; not a breakdown as required by Commission Rule 30. The appellants argue that because the bills were not itemized and submitted in a timely fashion, they have not been afforded the opportunity to determine the reasonableness, necessity, or relatedness of the medical treatment or the amounts claimed. Moreover, appellants argue that a blanket statement from a health-insurance provider with only the total amount paid is insufficient for a determination of the reasonableness of the service as required by the Commission under Rule 30. Appellants also assert that the burden falls on the appellee to produce bills for medical services and to prove that those services were reasonable, necessary, and related to her compensable injury, and that appellee has failed to meet that burden.

■ ■ Arkansas Code Annotated section 11-9-809 (Repl. 1996) provides for the assessment of interest on awards of workers' compensation benefits. This section states that "Compensation shall bear interest at the legal rate from the day an award is made by either an administrative law judge or the full Workers' Compensation Commission on all accrued and unpaid compensation." This court has stated that interest on an award of compensation begins to run upon accrued and unpaid installments of compensa-

tion to be computed from the dates when they should have been paid, beginning, however, no earlier than the date on which a referee or full Commission first enters an award allowing or denying a claim. *Eureka Log Homes v. Mantonya*, 28 Ark. App. 180, 772 S.W.2d 365 (1989). This rule was explained in *Clemons v. Bearden Lumber Co.*, 240 Ark. 571, 401 S.W.2d 16 (1966), in which the court wrote,

> This rule has the merit of simplicity, fixing the rights of all concerned with certainty. It has the far more important merit of fairness, providing the claimant with some measure of redress for the fact that the payment of his just claim has been delayed, through no fault of his, for months or even, as in the case at bar, for years. Morever [*sic*] this construction of the statute treats delinquent payments with the same justice that applies to advance payments, which must be discounted to their present value.

240 Ark. at 576, 401 S.W.2d at 19. This court has found that since very few seriously injured employees have the resources to pay for expensive medical care, the award of interest is part and parcel of the benefits due an injured employee. *Eureka Log Homes v. Mantonya, supra.*

 Arkansas Workers' Compensation Rule 30 was promulgated pursuant to Ark. Code Ann. § 11-9-517 (Repl. 1996) for the purpose of implementing a medical cost-containment program with respect to injuries adjudged to be compensable under our workers' compensation laws. While it is true that a workers' compensation claimant has the burden of proving the necessity, reasonableness, and the relatedness of his bills for medical services, we do not read Rule 30 as either enhancing or diminishing that burden. Nor do we see anything in Rule 30 that relieves a workers' compensation insurance carrier from the obligation to pay interest pursuant to Ark. Code Ann. § 11-9-809. Rather, Rule 30 is aimed at providing a procedure for the submission, review, and payment of workers' compensation related medical expenses, with the goal of reducing those expenses. The rule establishes a procedure by which a carrier that disputes a medical-service provider's bill can seek an adjustment and can even request an administrative hearing if no agreement can be reached with a medical-services provider to adjust a bill. This procedure was

available to the appellants had they elected to utilize it. Instead, appellants elected to contest the compensability of appellee's claim, and, with full knowledge that appellee had undergone substantial medical treatment, including two surgeries, and incurred substantial bills, stood aside while the medical bills were being paid by someone else.

■ It is also true, as appellants assert, that Rule 30(I)(2) states that a carrier shall not make payment for a service unless all required review activities pertaining to that service are complete. Again, appellants' difficulty in relying upon this provision is that they chose to contest the compensability of appellee's claim and to not pay the bills. We do not believe that Rule 30 can be construed to permit a workers' compensation carrier to controvert the compensability of a claim, decline to pay any of the claimant's medical bills, and then, upon the Commission's determination that the claim is compensable, complain that it did not have the opportunity to utilize the procedures set out in Rule 30 for objecting to the appropriateness of those bills. By the time the claim was determined to be compensable, the medical bills had been long since paid by appellee's medical insurers, and it was too late for appellants to avail themselves of the provisions of Rule 30. In declining to pay the bills and standing by while the appellee or some other insurance source paid them, appellants waived their right to rely on Rule 30.

The law judge addressed appellants' argument that they should not have to pay interest, when he wrote,

> The evidence clearly reflects that Respondents #1 had the capabilities and means to ascertain the extent of its obligation relative to the claimant. Further, Respondents #1 were under directive to satisfy its statutory obligation pursuant to the February 22, 1994, Order and Opinion. The claimant in the instant claim has undergone a hearing on the issue of compensability relative to her May 25, 1990, injury and has been awarded workers' compensation benefits in a February 22, 1994, Opinion. Thereafter, an appeal was had and respondents directed to comply with the previous order and ruling. As a consequence of the orders of the Commission filed in this claim respondent was not in a position to idly sit by and wait to see if the bills would be submitted for

the claimant's medical treatment. Respondent was fully aware that it had not paid bills relative to the claimant's surgeries and medical travel. . . . Respondents #1 failure to even put forth a possible good faith effort is evidenced by the fact that it has not paid even minimally on the impairment rating. Respondents #1 adherence to its statutory obligation under the Arkansas Workers' Compensation statute and Awards, Order, and directives of the Workers' Compensation Commission with respect to the handling of this claim when considered in its entirety is at best flagrant and broach the boundary of misconduct.

■ Appellants presented no evidence of any efforts they had made to obtain copies of the medical bills or of any attempts on their part to pay them. The law judge found that appellants were fully aware that they had not paid the bills relative to the claimant's surgeries and medical travel, and he concluded "that respondent's [*sic*] explanation for its failure to pay medical benefits on behalf of the claimant in accordance with the February 22, 1994, Award and Order is not persuasive and wholly lacking in credibility." This court has stated that we defer to the Commission in determining the weight of the evidence and the credibility of the witnesses. *High Capacity Prods. v. Moore* and *Mikel v. Engineered Specialty Plastics, supra.* We cannot say that the decision of the Commission is not supported by substantial evidence.

Affirmed.

JENNINGS and ROGERS, JJ., agree.

PITTMAN and AREY, JJ., dissent.

JOHN B. ROBBINS, Chief Judge, dissenting. The prevailing opinion of our court affirms an award of interest made by the Workers' Compensation Commission to an injured employee. The interest award pertains to over $91,000 in medical expenses incurred by the claimant. This does not include a bill for $150, which was submitted to appellant's carrier and timely paid. The bills representing the outstanding $91,000 of medical expenses were never submitted to appellant's insurance carrier, as required by Workers' Compensation Rule 30, yet the Commission, and now our court, requires appellants to bear the additional burden of

paying interest on those medical expenses. While mindful of the standard of review when reviewing decisions of the Commission, I am also mindful that an agency's interpretation of promulgated rules is not binding on this court if the interpretation is plainly erroneous or inconsistent. *Harness v. Arkansas Public Serv. Comm'n*, 60 Ark. App. 265, 962 S.W.2d 374 (1998).

The appellants were merely following the stated purposes of Rule 30 of the Commission promulgated pursuant to Ark. Code Ann. § 11-9-517 (1987). The Rule became effective September 15, 1992, and the revisions on September 1, 1994. The earliest order that found appellants liable for medical expenses was entered in February 1994. The Rule "establishes a system for the evaluation by a carrier of the appropriateness in terms of both the level of and the quality of health care and health services provided to injured employees, based upon medically accepted standards." Rule 30, Part I(A)(e). It defines a "bill" as a request by a provider submitted to a carrier for payment for health-care services provided in connection with a covered injury or illness. Rule 30, Part I(F)(4). It further defines a "properly submitted bill" as a request by a provider for payment of health-care services submitted to a carrier on appropriate forms that are completed pursuant to, and that must contain appropriate documentation as required by Rule 30. According to the Rule, a carrier shall not make a payment for a service unless all required review activities pertaining to that service are completed. Rule 30, Part I(I)(2). Furthermore, billings that are not submitted on the proper form may be returned to the medical provider for correction and resubmission, and the days between the return to the medical provider and their return when corrected to the carrier shall not apply toward the thirty days within which the carrier is required to make payment. Rule 30, Part I(I)(6). The tenor of this rule, promulgated according to statute and approved by the Commission for use by those under the Workers' Compensation Act, is clearly that the medical provider, or the claimant who should be well aware of who his specific providers are and who are billing him or her for the excess, must bear the burden of presenting known bills. The rules do not place this responsibility on the employer or its carrier.

Otherwise, as in the instant case, a carrier would be subject to punishment by the Commission as a consequence of abiding by the Commission's own rules. In my mind, the Commission's interpretation, which the prevailing opinion affirms today, creates an inconsistency within Rule 30.

The prevailing opinion cites *Clemons v. Bearden Lumber Co.*, 240 Ark. 571, 401 S.W.2d 16 (1966), in which the supreme court said with regard to the statute on interest that:

> It has the far more important merit of fairness, providing the claimant with some measure of redress for the fact that payment of his just claim has been delayed, through no fault of his, for months or even, as in the case at bar, for years.

Thus, the statute contemplates, as it has been interpreted by our highest court, that the claimant must bear no fault in the processing of his "just claim." I cannot in good conscience condone an interest award when, as the prevailing opinion agrees, the claimant bears the burden of proving the necessity, reasonableness, and relatedness of his bills for medical services. A carrier should indeed pay those reasonably related medical bills as ordered by the Commission. It should not, however, be penalized for contesting a claim it deemed noncompensable — a right it has at law — until the claimant could prove that the employer was indeed liable for those costs. At the very earliest, it was February 1994 when appellants were ordered to reimburse three health-insurance companies that had paid for claimant's medical expenses while the claim was controverted. At such time as appellants were found to be liable for the medical expenses related to claimant's injury, they stood ready and willing to pay upon proper submission and processing of her bills. Until the appellants were found liable for these expenses, how could they be expected to utilize the process set up in Rule 30? I cannot agree that there has been a waiver during the period of litigation.

We have before us, as did the Commission, the testimony of the claimant herself. She acknowledged that she did not provide appellants any of the bills until the March 1, 1996, hearing, and then she only furnished summary totals from each health-insur-

ance provider. The claimant further acknowledged that "most of the times I was going to the doctor, it was for my back" but some of the visits were for B-12 injections, hormone shots, chest pain evaluations, bladder infections, annual checkups, and mammograms. She admitted some submissions to her health–insurance company were for medical expenses incurred by her son. By her own admission, there were costs not associated with any compensable conditions that were being lumped into the health–insurance summaries.

While *Frank J. Rooney, Inc. v. Pitts*, 268 Ark. 911, 597 S.W.2d 120 (Ark. App. 1980), is a case involving a penalty, rather than interest, it contains instructive dicta. We stated that the insurance company was being asked to pay medical expenses in excess of $40,000 and was entitled to a hearing and determination on the issue of reasonableness and necessity without being assessed a penalty, inasmuch as the Commission's order that found the employer liable did not deal with the exact amount of medical expenses to be paid. We considered $40,000 of expenses to be "astronomical" in 1980. The same can be said of the $91,000 plus of medical expenses in today's case and, similarly, appellants were entitled to the same right of exploring the reasonableness of the bills.

I cannot reason that appellants should be penalized with interest in this case for complying with the Commission's Rules, and I therefore respectfully dissent.

PITTMAN and AREY, JJ., join in this dissent.